**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

LATARSHA CREEKMORE,

    Plaintiff,

v.                                                                 ACTION NO. 2:08cv235

MARYVIEW HOSPITAL,

    Defendant.

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by an order of reference entered July 25, 2008.

This case was referred for a report and recommendation on a Motion to Dismiss filed by Defendant Maryview Hospital ("Maryview"). Doc. 9. For the reasons stated herein, the Court recommends Defendant's Motion to Dismiss the complaint be DENIED.

**I. PROCEDURAL HISTORY**

Plaintiff originally filed this medical malpractice action against Dr. Sidath Jayanetti ("Dr. Jayanetti"), Portsmouth Community Health Center ("PCHC"), and Maryview in the Circuit Court of the City of Portsmouth. Doc.1, Ex. A (entitled "Motion for Judgment"). On May 22, 2008, the United States removed the action to this Court, stating that Dr. Jayanetti and PCHC were acting within the scope of their employment as deemed employees of the United States at the time of the

incident described in the complaint. Doc. 1. The Government was substituted as defendant for Dr. Jayanetti and PCHC on May 22, 2008. Doc. 2. On May 29, 2008, the United States filed a Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The United States argued that Plaintiff had failed to exhaust her administrative remedies under the Federal Torts Claims Act prior to filing suit. *Id*. The Court dismissed the action against the United States on June 23, 2008, without prejudice to Plaintiff refiling the suit against the Government after final disposition of an administrative claim. Doc. 11. Maryview is currently the only defendant.[1]

On June 13, 2008, Maryview filed the present Motion to Dismiss. Doc. 9. Plaintiff filed her opposition to this motion on June 23, 2008.[2] In her opposition, Plaintiff also requested that the Court stay the entire matter until her administrative remedies have been exhausted and the United States can be joined as a defendant.[3] *Id.* Maryview replied on June 30, 2008.

On September 2, 2008, the court heard argument on the Motion to Dismiss. Kim M. Crump represented the Plaintiff and Madeline H. Starks represented the defendant. The Official Court Reporter was Jody Stewart.

---

[1] Although the case no longer involves a federal law claim, the Court may retain jurisdiction over the state law claims at its discretion. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343 (1988) (holding that when a case is removed to federal court, and the plaintiff then dismisses federal claims, it is within the district court's discretion to remand the case back to state court).

[2] Plaintiff submitted both a Response to the Motion to Dismiss [Doc. 13] and a Memorandum in Support of this response [Doc. 14], although she was only required to submit one document according to Local Civil Rule 7(F)(1).

[3] Plaintiff must also meet the certification requirement of Va. Code § 8.01-20.1 as to the United States, if the United States is later joined as a defendant. *See Parker v. United States,* 475 F. Supp. 2d 594 (E.D. Va. 2007) (noting that the Virginia Medical Malpractice Act certification requirement applies in actions under the Federal Tort Claims Act).

2

## II. FACTUAL HISTORY

Plaintiff alleges that the staff at both Maryview and PCHC were negligent while treating Plaintiff for complications arising out of a pregnancy. Doc. 1, Ex. A. The only medical doctor specifically referenced by Plaintiff is Dr. Jayanetti, who, as mentioned above, is no longer party to the case. *See* Doc. 2. Dr. Jayanetti treated Plaintiff at both Maryview and PCHC. Dr. Jayanetti performed an emergency caesarean at Maryview on or about February 25, 2005. Doc. 1, Ex. A. Following the surgery, Plaintiff remained at Maryview for post-operative care. *Id.* At some point, Plaintiff went into hypovolemic shock and suffered a stroke. *Id.* Dr. Jayanetti then performed a second surgery to stop internal bleeding. *Id.*

Plaintiff alleges that Dr. Jayanetti failed to meet the standard of care while treating the Plaintiff prior to, during, and following the Plaintiff's two surgeries at Maryview. *Id.* As to Maryview specifically, Plaintiff alleges that "through its nurses, employees, and agents," Maryview deviated from the standard of care by failing to properly monitor Plaintiff after the surgeries. *Id.* Plaintiff additionally alleges that the nurses, employees, and agents at Maryview failed to report changes in Plaintiff's condition to her physician, Dr. Jayanetti, so that further steps could be taken to prevent harm to Plaintiff. *Id.* According to the complaint, this has caused Plaintiff to become permanently disabled. *Id.* Plaintiff asks for judgment in the amount of $3,500,000. *Id.*

Maryview was served with Plaintiff's complaint on January 31, 2008. Following service, Maryview requested, in writing, pursuant to Va. Code Ann. § 8.01-20.1, that Plaintiff provide a certification that an expert witness had certified that Maryview deviated from the applicable standard of care and the deviation was a proximate cause of Plaintiff's injuries. *See* Doc. 10, Ex. A, letter from Maryview's counsel dated Feb. 15, 2008. On February 28, 2008, Plaintiff's counsel faxed a

purported certification to Maryview's counsel. Doc. 10, Ex. B ("Nurse Raya Fax"). The certification, signed by Patricia Raya, RN, C.MBA on January 20, 2008, stated that Nurse Raya had reviewed Plaintiff's medical records and "based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." *Id.* Maryview's counsel responded to this fax on April 9, 2008, with a letter stating that this certification was deficient because Plaintiff had only provided a standard of care expert and had not provided a causation expert. Doc. 10, Ex. C.

What happened next is unclear. In support of the Motion to Dismiss, Maryview attached a fax from Plaintiff's counsel, undated, addressed to Maryview's counsel, with a cover sheet stating:

> [y]our letter failed to state what you alleged as the deficiency. The nursing and physician standards are different and certainly a nurse practitioner can testify as well as a nurse can say what caused her stroke. Nevertheless, the standard of care and the deficiency of care for the hospital is based on nursing standards. *Although not applicable to your client,* please find attached the certification from a physician.

Doc. 10, Ex. D ("Maryview Version") [emphasis added]. Attached to this fax cover sheet is a certification, identical in language to Nurse Raya's certification, signed by Richard L. Stokes, M.D. on January 28, 2008. As the fax cover sheet stated that Dr. Stoke's certification was "not applicable" to Maryview, Maryview assumed that this certification was meant for Dr. Jayanetti and PCHC.

Plaintiff also attached Dr. Stokes' certification to her opposition to the Motion to Dismiss. Doc. 13, Ex. 1. Plaintiff's submission, however, does not contain the cover sheet supplied with Maryview's motion. *See* Doc. 10, Ex. D. Instead, Plaintiff included a different fax cover sheet, dated April 16, 2005 [sic], addressed to Maryview's counsel, which states as follows:

> As a courtesy, I provided you with some of the experts I consulted, however, please be advised that they were not the only ones consulted and the statute does

4

> not require that I relay to you who they are. I only have to verify that I have obtained an expert who can certify that the standard of care was breached causing the injuries suffered by the plaintiff. Kindly take this notice as clarification that I have obtained the necessary experts who qualify under the statute. After receiving your first notice of the deficiency, I called your office several times without the benefit of a return call to clarify what you were requesting. Please also be advised that the motion for judgment when filed indicated that an expert had reviewed the file and indicated that the standard of care was breached causing the resulting injuries alleged in the motion for judgment. If you have any questions, please contact me.

Doc. 13, Ex. 1. ("Plaintiff's Version").[4]

### III. STANDARD OF REVIEW

Va. Code § 8.01-20.1 states that by filing a Motion for Judgment alleging medical malpractice, a plaintiff certifies that at the time the plaintiff requests service of process upon defendant,

> the plaintiff has obtained from an expert witness whom the plaintiff reasonably believes would qualify as an expert ... a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was proximate cause of the injuries claimed.

This expert does not have to testify at trial, and this expert's identity and qualifications are not discoverable unless the expert does testify at trial and this information is otherwise discoverable. *Id.* Plaintiff is not required to serve this certification on the defendant with the complaint. Instead, the defendant may request, in writing, that within ten days the plaintiff "provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert witness at the time service was requested." *Id.* The only exception to this certification requirement occurs when the plaintiff "asserts a theory of liability where expert testimony is unnecessary because the

---

[4] There is no indication or statement in the complaint that Plaintiff consulted an expert, as stated in this fax cover sheet.

alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Id.* Plaintiff has not argued that this exception applies here.

Expert witness testimony in a medical malpractice case is defined in Va. Code § 8.01-58.20A. An expert witness is qualified to testify "if he demonstrates expert knowledge of those standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards." *Id.* The standard of care which medical professionals and hospitals are held to is "that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in [Virginia]." *Id.*

In deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and "the facts must be viewed as the plaintiff most strongly can plead them." *Coakley & Williams*, *Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 457 (4th Cir.1983), cert. denied, 475 U.S. 1121 (1986).

## IV. ANALYSIS

Here, Plaintiff has submitted two certifications to Maryview that may meet the requirements of Va. Code § 8.01-20.1. First, the Nurse Raya Fax sent on February 28, 2008. The second, from Dr. Stokes, was faxed in mid April, 2008. However, as noted above, Plaintiff and Maryview have submitted different cover sheets for this fax that are both purportedly from Plaintiff's counsel to Maryview's counsel. The Maryview Version, Doc. 10, Ex. D, indicates that Dr. Stokes' certification does not apply to Maryview. The Plaintiff's Version, Doc. 13, Ex. 1, along with Plaintiff's argument, indicates that Dr. Stokes' certification *does* apply to Maryview.

Maryview's understanding, at the time it submitted its motion to dismiss, is that the only certification Plaintiff had submitted as applied to Maryview was from Nurse Raya. Maryview argues that the case should be dismissed because the Nurse Raya Fax is insufficient under Va. Code § 8.01-

6

20.1, because it is from a nurse, not a medical doctor. Doc. 10 at 4. Maryview states that a nurse is not qualified to testify as to causation. For this proposition, Maryview cites *Combs v. Norfolk and W. Ry. Co.*, 507 S.E.2d 355 (1998). In that case, the Supreme Court of Virginia found that an expert in the field of biomechanical engineering was not qualified to testify as to the medical cause of the plaintiff's injuries. *Id.* at 496-97. The court stated that "the question of causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine. . . . [The expert] was not a medical doctor and, thus, was not qualified to state an expert medical opinion regarding what factors cause[d]" the plaintiff's injuries. *Id.*

The Virginia Supreme Court, however, has never stated that it is an absolute rule that only a medical doctor can testify as to medical causation or diagnosis. Indeed, while the court has noted that the "general rule" is that "only a medical doctor may give an expert opinion about the cause of a physical human injury," there are an uncertain number of exceptions to this rule. *See John v. Im*, 559 S.E.2d 694, 697 n.1 (Va. 2002). In *Velazquez v. Commonwealth*, 557 S.E.2d 213 (Va. 2002), the Virginia Supreme Court affirmed the trial court's decision to allow a sexual assault nurse examiner to testify as to the causation of a rape victim's injuries. The court noted that "it has long been accepted that nurses and other healthcare professionals with the proper training, expertise, and experience are qualified to give expert opinions on medical causation in appropriate circumstances." *Id.* at 103-04. The court additionally stated that the holding in *Combs* was reached "because a medical diagnosis was not within the field of expertise in which the witness had been qualified by the trial court, rather than because the expert was not a licensed doctor." *Id.* at 102-03. Furthermore, in *Fitzgerald v. Commonwealth*, 643 S.E.2d 162 (Va. 2007), the Virginia Supreme Court affirmed a trial court's decision to allow a licensed professional counselor to render an expert opinion as to

the diagnosis of an individual as suffering from post-traumatic stress syndrome, even though generally such a diagnosis is made by a psychologist. This holding was based, in part, on the fact that the statutory scheme governing licensed professional counselors "expressly authorizes those qualified . . . to make diagnosis of mental disorders. . . ." *Id.* at 165.

Trial courts in Virginia have also refused to enforce the holding of *Combs* as a strict rule. In *Brown v. Commonwealth Pretroleum Services, Ltd.*, Nos. 27187, 27188, 2003 WL 22521443 (Loudon Cty. Cir. Ct. Sept. 30, 2003), the court found that a chiropractor was qualified to testify as to whether the defendant's negligence caused the plaintiffs' injuries, even though a chiropractor is not a medical doctor. The court noted that a chiropractor, like a doctor, is trained in a "healing art" and is licensed by the state to practice. *Id.* at *2. The court allowed such testimony as long as it "is within the scope of the practice of chiropractic." Notably, the chiropractor expert in question had also treated and examined the plaintiffs. In all of these cases, the court emphasized that it must still determine whether an expert witness in a given case possesses sufficient qualifications to testify as to causation and diagnoses. *See, e.g., Fitzgerald*, 643 S.E.2d at 165. In other words, a decision as to whether an expert witness is qualified to testify as to causation must be made on a case by case basis. Here, there is little information regarding Nurse Raya. There is little to no information regarding her training, expertise, level of education, whether she regularly makes diagnoses, or whether she treated Plaintiff. At this stage in the litigation, however, this information is not necessary. The statute specifically states that the plaintiff does not have to provide such information with the certification. *See* Va. Code § 8.01-20.1 (stating that the defendant is not entitled to discover the identity or qualifications of the certifying expert). If Nurse Raya testifies as an expert as to causation during the trial, this information will be necessary for Plaintiff to establish that she is

8

qualified to do so. *See id.* All that is necessary at this stage is that Plaintiff assert a reasonable belief that Nurse Raya is qualified to testify as an expert witness.

Even under Maryview's version of the fax cover letter, Plaintiff demonstrates a reasonable belief that Nurse Raya is qualified to testify as an expert witness. Plaintiff's counsel indicates in Maryview's version of the fax cover letter, "[t]he nursing and physician standards are different and certainly a nurse practitioner can testify as well as a nurse can say what caused her stroke. Nevertheless, the standard of care and the deficiency of care for the hospital is based on nursing standards." *See* Doc. 10, Ex. D. While awkwardly stated, the cover letter indicates counsel's belief that Nurse Raya qualified as an expert on both causation and standard of care with respect to defendant Maryview. Given that the Virginia cases discussed previously do not establish a bright line rule regarding the qualifications necessary to testify as an expert, counsel's belief was reasonable. Plaintiff's counsel did not make the argument that Nurse Raya qualified as an expert in her responsive briefs or during her oral argument before the court. However, whether counsel still held this belief when she briefed this motion, or when she attended the motion hearing is not relevant. Counsel's reasonable belief that Nurse Raya qualified as an expert at the time she forwarded the certification to Maryview satisfies the requirements of Virginia Code § 8.01-20.1.

Furthermore, drawing all inferences in favor of the Plaintiff, Dr. Stokes is clearly a qualified expert regarding both standard of care, and causation. Plaintiff's counsel has maintained throughout her filings and at the hearing that she obtained Dr. Stokes's certification prior to serving Maryview with the lawsuit. Dr. Stokes's certification was forwarded to Maryview's counsel, although well after the ten day deadline established in the statute. The conflicting cover letters make it difficult to determine whether plaintiff's counsel reasonably believed, at the time she forwarded the certification

9

to Maryview's counsel, that Dr. Stokes's certification applied to Maryview. In Plaintiff's version of the cover letter attached to Dr. Stokes's certification, Plaintiff's counsel states, "I only have to verify that I have obtained an expert who can certify that the standard of care was breached causing the injuries suffered by the plaintiff. Kindly take this notice as clarification that I have obtained the necessary experts who qualify under the statute." It is clear that at the time she drafted her responsive briefs and argued at the hearing, Plaintiff's counsel did intend Dr. Stokes's certification to apply to this defendant. Drawing all inferences in favor of the Plaintiff, Dr. Stokes's certification was intended to apply to Maryview, and the provision of his certification complies with the statute with the exception of not being timely produced.

Plaintiff's counsel substantially complied with Virginia Code § 8.01-20.1. Defense counsel provided no Virginia case, and this court has found none, where sanctions were awarded under the statute due to deficient or untimely certification. While Plaintiff's counsel's compliance with the statute was inartful at best, it meets the minimal requirements established by the statute.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant's motion to dismiss be DENIED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(c), computed pursuant to Rule 6(a) of the Federal Rules

of Civil Procedure, plus three days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

_____
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 9, 2008

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Kim M. Crump, Esq.
Kim Michelle Crump, P.C.
735 Newtown Road
Suite 203
Norfolk, VA 23502

Madeline H. Stark, Esq.
Rawls & McNelis, P.C.
1111 E. Main Street
Suite 1701
Richmond, VA 23219

                                                              Fernando Galindo, Clerk

                                                              By_____
                                                                   Deputy Clerk
                                                                   October      , 2008